UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

|  |  |
|---|---|
| JOHN DOE,<br>*Plaintiff,*<br><br>v.<br><br>DAVID BYRD, *et al.*,<br>*Defendants.* | No. 1:18-cv-00084<br><br>Judge Eli Richardson<br>Magistrate Judge Jeffery Frensley |

## DEFENDANTS JOINT MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION UNDER FED. R. CIV. P. 12(b)(1)

Defendants, David Byrd, in his individual and official capacity as Member of the Tennessee House of Representatives; Wayne County School System; Ryan Franks, in his individual and official capacity as Principal of Wayne County High School, jointly request that the Court dismiss the complaint in this matter for lack of subject matter jurisdiction.

Plaintiff, John Doe, is a student at a Tennessee high school where he claims seniors attending a field trip were compelled to wear t-shirts supporting a political candidate, State Representative David Byrd, in violation of the students' First Amendment Rights. Doe does not claim that he was compelled to wear the t-shirt in question or even that he is fearful of being compelled to wear such a t-shirt at some identifiable moment in the future. Rather, the complaint carefully skirts the reality that, upon information and belief, Doe did not, in fact, attend the field trip in question. Moreover, upon information and belief, prior to Doe's voluntary decision to

forego attending the field trip he was advised on numerous occasions that there was no requirement whatsoever that he receive or wear the t-shirt in question.

On a motion to dismiss for lack of subject matter jurisdiction, the Court must view the facts as alleged in the complaint in the light most favorable to plaintiff. Based upon the facts alleged, Doe was, at most, a mere bystander to the activity he complains about and, as a result, he cannot articulate in what way he has been, or will be, injured. Accordingly, he lacks standing to pursue this action. Because of Doe's failure to identify a judicially cognizable injury-in-fact to his person (*i.e.* standing), this Court lacks subject matter jurisdiction. Defendants request the Court dismiss this matter pursuant to Fed. R. Civ. P. 12(b)(1) because of the failure of the complaint to adequately plead facts sufficient to establish standing. Insofar as John Doe wishes to persist in attempting to allege the requisite standing to bring this suit and/or that the Court has subject matter jurisdiction over this claim, Defendants request the Court hold a limited evidentiary hearing to resolve the questions of fact regarding John Doe's standing and this Court's jurisdiction under Article III of the Constitution.

## I.  Background[1]

### A.  Wayne County's Alleged Policy

Wayne County High School (WCHS) is a public high school serving grades 9-12, within the Wayne County School System, located in Tennessee. (Complaint, D.E. 1 at ¶ 9). John Doe is a resident of Wayne County and a student at WCHS. (Complaint, D.E. 1 at ¶ 2). The complaint does not identify the specific grade-level of John Doe. The complaint alleges that the Wayne County School System has a policy that students wear clothing with political messages to official school events. (Complaint, D.E. 1 at ¶ 9). The complaint claims that WCHS requires seniors

---

[1] The facts are taken from the Complaint and are accepted as true for purposes of this Memorandum only. Defendant reserves the right to dispute these facts at a later time.

attending the senior-class field trip to the state capitol in Nashville to wear t-shirts bearing the name and logo of State Representative David Byrd. (Complaint, D.E. 1 at ¶¶ 11, 16, 18, 19). This is alleged to be compelled speech in violation of the student's First Amendment rights. (Complaint, D.E. 1 at ¶ 21). There is no allegation, however, that John Doe anticipates or is scheduled to participate in trips in the future that are allegedly subject to this policy.

### B. October 15, 2018

At some point prior to October 15, 2018, students and families at WCHS received a voicemail stating:

> Seniors should proceed straight to the cafeteria for roll call and you will receive your Senior '19 tee shirt from Representative Byrd. Once you receive your shirt, please go to the bathroom and change into it and then safely place the shirt you had on somewhere in the school. Buses will leave as soon as shirts have been distributed and we will return around the time school is out.

(Complaint, D.E. 1 at ¶ 11). The Complaint does not allege that Doe personally received the aforementioned message.

According to the Complaint, "students were never told that wearing the shirts were optional and the faculty of Wayne County Schools consistently gave the impression that wearing the shirts were mandatory." (Complaint, D.E. 1 at ¶ 14). The complaint does not provide that Doe was personally told wearing the t-shirt was not optional. But, the complaint does allege that "students that attended the field trip believed wearing the shirt was compulsory". (Complaint, D.E. 1 at ¶16). Never is it alleged that John Doe actually attended the field trip or that he believed wearing the t-shirt was compulsory.

### C. Plaintiff's Alleged Causes of Action

Plaintiff asserts two causes of action under 42 U.S.C. § 1983 and the First and Fourteenth Amendments:

3

One—Plaintiff requests an injunction ordering WCHS to cease enforcing its policy of compelling students to wear clothing bearing political speech—in particular Representative Byrd t-shirts. (Complaint, D.E. 1 at ¶ 22-26).

Two—Plaintiff requests an injunction ordering David Byrd, the Wayne County School System and Ryan Franks from enforcing selective directives that students wear clothing containing political speech in favor of only Representative Byrd which discriminates against Plaintiff and chills the speech of other candidates. (Complaint, D.E. 1 at ¶ 27-31).

**II.     Law and Argument**

    **A.     Subject Matter Jurisdiction & Standing**

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997) (citing U.S. Const. art. III, § 2). "Standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992). "The irreducible constitutional minimum of standing contains three elements." *Id*. First, the plaintiff must have suffered an "injury-in-fact" – an invasion of a legally-protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical. *Id*. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Id*. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id*.

Apart from this minimum constitutional mandate, federal courts recognize other limits on the class of persons who may invoke the courts' decisional and remedial powers—namely "the

plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties. *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205, 45 L.Ed.2d 343, 355 (1975). The requirement of standing limits federal court jurisdiction to actual cases and controversies so that the judicial process is not transformed into "a vehicle for the vindication of the value interests of concerned bystanders." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982).

Subject-matter-jurisdiction challenges to standing under Fed. R. Civ. P. 12(b)(1) come in two varieties: a facial attack and a factual attack. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017) (citations omitted).

A facial attack "questions merely the *sufficiency of the pleading*." *Id.* (*emphasis* added). In considering a facial attack, the Court takes the factual allegations in the complaint as true, just as in a Rule 12(b)(6) motion. *Id.* Thus, in reviewing a facial challenge to standing, this Court considers only the complaint and its exhibits. *Id.; Binno*, 826 F.3d at 344.

Alternatively a factual attack, raises a factual controversy requiring the district court to "weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Wayside Church v. Van Buren Cty.*, 847 F.3d at 817 (citing *Gentek Bldg. Prods., Inc.*, 491 F.3d at 330). When a factual attack raises a factual controversy, the Court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts. *Id.* (citations omitted).

### B. Injury-in-Fact

To establish an injury-in-fact, a litigant must demonstrate either a concrete harm (*i.e.* past injury) or the threat of such harm. *Morrison v. Bd. of Educ.*, 521 F.3d 602, 608 (6th Cir. 2008). "[A] plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 134 S. Ct. 2334, 2342, 189 L.Ed.2d 246, 255 (2014) (internal citation omitted).

Plaintiffs need only support their claim of a credible threat of prosecution with general factual allegations, "for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *White v. United States,* 601 F.3d 545, 551 (6th Cir. 2010) (quoting *Lujan*, 504 U.S. at 561). Thereafter, the motion to dismiss should be granted if "plaintiff's standing does not adequately appear from all materials of record." *Warth,* 422 U.S. at 502.

John Doe alleges both a past injury and apprehension regarding the threat of a future injury. In lodging a past injury, Doe alleges a "deprivation of his constitutional rights during the period [October 15, 2018] in which his constitutionally protected speech was chilled because of the school system's requirement." (Complaint, D.E. 1 at ¶ 32(d)). In furtherance of his claim regarding a future threat of injury, Doe asserts a "desire[] to express or not express his political views by engaging in speech for the candidate of his choice or electing not to engage in political speech at all," however, the school's policy precludes him from being able to make this choice. (Complaint, D.E. 1 at ¶ 30). As the Court's consideration of the complaint with respect to injury-in-fact varies according to theory, each will be addressed in turn.

### 1. **Past Injury**

"With respect to the standing of First Amendment litigants, the Supreme Court is emphatic: 'Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.'" *Morrison*, 521 F.3d at 608; citing *Laird*, 408 U.S. at 13-14; *see also Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) (requiring a harm to be "distinct and palpable" for standing purposes). The Sixth Circuit has identified the following non-exhaustive list of measures that substantiate an otherwise subjective allegation of chill: the issuance of a temporary restraining order, *County Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477, 482-83 (6th Cir. 2002); *Howard Gault Co. v. Tex. Rural Legal Aid, Inc.*, 848 F.2d 544, 558 (5th Cir. 1988); an eight-month investigation into the activities and beliefs of the plaintiffs by Department of Housing and Urban Development officials, *White v. Lee*, 227 F.3d 1214, 1226, 1228 (9th Cir. 2000); and "numerous alleged seizures of membership lists and other property" belonging to the plaintiffs, *Nat'l Commodity and Barter Ass'n v. Archer*, 31 F.3d 1521, 1530 (10th Cir. 1994).

What emerges from these cases is that for "purposes of standing, subjective chill requires some specific action on the part of the defendant in order for the litigant to demonstrate an injury-in-fact. Conversely, absent proof of a concrete harm, where a First Amendment plaintiff only alleges inhibition of speech, the federal courts routinely hold that no standing exists." *Morrison,* 521 F.3d at 609; *See, e.g., Grendell v. Ohio Supreme Court*, 252 F.3d 828, 834 (6th Cir. 2001) ("[F]ears of prosecution cannot be merely 'imaginative or speculative.'" (quoting *Younger v. Harris*, 401 U.S. 37, 42, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971))); *Adult Video Ass'n v. U.S. Dep't of Justice*, 71 F.3d 563, 566 (6th Cir. 1995) (same). Simply, "a litigant alleging chill must still

establish that a concrete harm—that is, enforcement of a challenged statute [or policy]—occurred or is imminent." *Morrison*, 521 F.3d at 610.

*Morrison v. Bd. of Educ.*, addressed the considerations bearing on the legitimacy of a claim for nominal damages premised on an allegation of past chilled speech. In *Morrison* a high school student alleged that he suffered a constitutional deprivation of his right to free speech when he refrained from expressing his anti-homosexual beliefs because he feared punishment under his school's anti-bullying policy. The Court held that "subjective chill" alone—without some other indication of imminent enforcement—did not constitute an injury-in-fact. *Morrison*, 521 F.3d at 608. Because the student had no indication from the school whether he would be punished, he did not sustain a concrete injury. *Id*. at 609-10.

John Doe's claim of a concrete injury is predicated on an allegation that he chilled his own speech based upon his perception that there was a school policy that he must wear the Representative Byrd t-shirt. But, Doe has utterly failed to identify what harm would have befallen him had he elected not to wear the t-shirt. Doe asks the Court, "essentially, to find a justiciable injury where his own subjective apprehension counseled him to choose caution and where he assumed—solely on the basis of a [at best, an allegedly unspoken policy]—that were he to speak, punishment would result." *Morrison*, 521 F.3d at 610. Absent a concrete act on the part of WCHS, Doe's allegations fall squarely within the ambit of "subjective chill" that the Supreme Court has definitively rejected for standing purposes. *Laird*, 408 U.S. at 13 (quotation marks omitted). Doe cannot point to anything beyond his own "subjective apprehension and a personal (self-imposed) unwillingness to communicate," *ACLU v. NSA,* 493 F.3d 644, 662 (6th Cir. 2007), and those allegations of chill, without more, fail to substantiate an injury-in-fact for standing purposes.

### 2. Future Injury

Doe also argues that the school policy regarding Rep. Byrd's t-shirts deprives him of the opportunity to exercise his First Amendment rights in the future; thus, he seeks injunctive relief through "a pre-enforcement challenge[, which] may be made before the actual completion of an injury in fact." *Grendell,* 252 F.3d at 832. "To establish standing for a free-speech claim, the Plaintiffs generally must show that 'the rule, policy or law in question has explicitly prohibited or proscribed conduct on the[ir] part.'" *Phillips v. DeWine*, 841 F.3d 405, 415 (6th Cir. 2016) (quoting *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 711 (6th Cir. 2015)), *cert. denied sub nom. Tibbetts v. DeWine*, 138 S. Ct. 301, 199 L. Ed. 2d 53 (2017). Doe must also establish that the "threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *SBA List*, 134 S. Ct. at 2341 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013)). Thus, in the pre-enforcement context, "a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute [or policy], and there exists a credible threat of prosecution thereunder.'" *Id.* at 2342 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979)); *See e.g. Plunderbund Media, L.L.C. v. DeWine*, No. 18-3270, 2018 U.S. App. LEXIS 33248, at *7-8 (6th Cir. Nov. 27, 2018).

Doe avers an intention to wear, or not wear, whatever t-shirt he chooses and, at least according to the complaint, this would run afoul of school policy. However, Doe must allege a credible threat of prosecution that is "not conjectural or hypothetical." *Lujan*, 504 US at 560 (internal quotation marks omitted).

"[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute [or governmental policy] that he claims deters the exercise of his constitutional rights." *SBA List*, 134 S. Ct. at 2342 (quoting *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974)). However, in the free speech context, where "some other indication of imminent enforcement" is lacking, "mere allegations of a 'subjective chill' on protected speech are insufficient to establish an injury-in-fact for pre-enforcement standing purposes." *McKay v. Federspiel,* 823 F.3d 862, 868-69 (6th Cir. 2016) (quoting *Berry v. Schmitt*, 688 F.3d 290, 296 (6th Cir. 2012)).

When plaintiffs rely on allegations of subjective chill, they must also "point to some combination of the following factors" to show the potential of enforcement:

(1) a history of past enforcement against the plaintiffs or others, *see, e.g., Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1049 (6th Cir. 2015);

(2) enforcement warning letters sent to the plaintiffs regarding their specific conduct, *see, e.g., Kiser v. Reitz*, 765 F.3d 601, 608-09 (6th Cir. 2014); *Berry*, 688 F.3d at 297; and/or

(3) an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action, *see Platt v. Bd. of Comm'rs on Grievances & Discipline of the Ohio Supreme Court*, 769 F.3d 447, 452 (6th Cir. 2014).

*McKay,* 823 F.3d 869.

"A threat of future enforcement may be 'credible' when the same conduct has drawn enforcement actions or threats of enforcement in the past." *Kiser*, 765 F.3d at 609. "[P]ast enforcement [of a policy] against the same conduct is good evidence that the threat of enforcement is not chimerical." *Russell*, 784 F.3d at 1049 (6th Cir. 2015) (quoting *SBA List*, 134 S. Ct. at 2345). In this respect, Doe fails to identify a single instance where an individual who declined to

10
Case 1:18-cv-00084 Document 24 Filed 02/21/19 Page 10 of 14 PageID #: 66

abide by the school's purported policy resulted in any punitive action.[2] *See e.g. Plunderbund Media, L.L.C. v. DeWine*, No. 18-3270, 2018 U.S. App. LEXIS 33248, at *10 (6th Cir. Nov. 27, 2018).

With respect to considering if the plaintiff has ever been warned that his conduct could result in punishment, Doe fails to allege that any official has ever issued a warning to Doe, or anyone else, regarding potential repercussions for failure to wear a specific t-shirt on the field trip. Again, this consideration supports a finding that the subjective chill alleged by Doe is, at best, chimerical—that is, existing only as the product of unchecked imagination.

This Court must also take into account that a policy is more likely to trigger a credible fear of punitive action if it contains a feature making enforcement of the policy "easier or more likely." *Plunderbund Media,* 2018 U.S. App. LEXIS 33248 at *20. One such feature is a citizen-enforcement provision authorizing a member of the public to file complaints. See *SBA List*, 134 S. Ct. at 2345; *Platt*, 769 F.3d at 452. In the case at hand, the only entity capable of levying punishment against Doe, is the principal of WCHS or the Wayne County School Board. Both of which Doe fails to allege have ever punished anyone for failure to abide by the alleged policy.

Finally, in some cases, it may be appropriate to consider a defendant's refusal to "disavow enforcement." *McKay,* 823 F.3d 869. Doe does not allege that Defendants' have refused to disavow enforcement. *See Thiede v. Burcroff*, No. 16-13650, 2018 U.S. Dist. LEXIS 7945, at 36-37 (E.D. Mich. Jan. 18, 2018) (noting that "*silence* as to enforcement [ ] does not amount to a *refusal* to disavow enforcement") (emphasis in original). Doe may attempt to cure this deficiency, and the many others, by offering evidence. Should that be the case, Defendants submit that this

---

[2] Indeed, the only support that Doe provides to argue the existence of the policy in question is a truncated voicemail message from an unidentified speaker. While not the thrust of this motion—the dearth of "evidence" on this point speaks directly to the fact that there is no policy requiring any WCHS students to wear political speech at any time.

Court may convert this Motion's facial attack into a factual attack and hear witness testimony in an evidentiary hearing limited the threshold issue of Doe's standing. *Ohio Nat'l Life Ins. Co,* 922 F.2d at 325.

## III. Conclusion

The dispositive issue in this matter is whether John Doe has suffered an injury-in-fact. Doe has alleged a subjective chill of his constitutional right to free speech on October 15, 2018, but he has failed to allege a concrete injury. Likewise, Doe has failed to allege a factual, non-conjectural basis to anticipate that even if he did elect to go against the purported policy regarding the wearing of Representative Byrd's t-shirt, that any harm would follow. Without a concrete injury or a credible threat of injury-in-fact, Doe lacks standing to bring this suit and Defendants request the Court dismiss this claim.

DATED this 21st day of February, 2019.

Respectfully submitted,

*/s/Clay Lee*
Clay Lee (BPR # 029271)
Epstein Becker & Green, P.C.
424 Church Street, Suite 2000
Nashville, Tennessee 37219
Telephone: (629) 802-9250
Facsimile: (202) 296-2882
Clay.Lee@ebglaw.com

*/s/Matthew D. Janssen*
Matthew D. Janssen (BPR # 035451)
Assistant Attorney General
Education and Employment Division
UBS Tower, 18th Floor
P.O. Box 20207
Nashville, Tennessee 37202
Telephone: (615) 741-7327
Facsimile: (615) 741-7327
Matthew.Janssen@ag.tn.gov
*Attorneys for David Byrd*

*/s/T. William A. Caldwell*
T. William A. Caldwell (BPR # 027130)
Ortale Kelley Law Firm
330 Commerce Street, Suite 110
Nashville, Tennessee 37201
Telephone: (615) 256-9999
wcaldwell@ortalekelley.com

*Attorney for Wayne County School System and Ryan Franks*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing was electronically filed on the 21st day of February, 2019. Notice of this filing will be sent by operation of electronic mail to the following:

Benjamin A. Gastel
Branstetter, Stranch & Jennings, PLLC
The Freedom Center
223 Rosa L. Parks Avenue
Nashville, TN 37203

*/s/Clay Lee*
Clay Lee