IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

JOHN DOE,  )
 )
   Plaintiff,  )
 )  NO. 1:18-cv-00084
v.  )  JUDGE RICHARDSON
 )
DAVID BYRD, et al.,  )
 )
   Defendants.  )

## MEMORANDUM OPINION

Pending before the Court is a Motion for Reconsideration (Doc. No. 63), filed by Defendants Wayne County School System and Ryan Franks ("School System Defendants"). This motion asks the Court to reconsider the Magistrate Judge's Order at Doc. No. 58.[1]

Also pending before the Court is an Appeal and Objection (Doc. No. 65), filed by Defendant David Byrd, objecting to the same Order of the Magistrate Judge. The challenged Order denied Defendant Byrd's Motion to Rescind the prior protective order in this case and granted Plaintiff's Cross-Motion for Protective Order with additional protections. (Doc. No. 58).

The underlying issue in both the Motion and the Appeal is whether Plaintiff should be allowed to continue to proceed in this action under the pseudonym "John Doe," instead of his actual name.

Defendant Byrd's Appeal and Objection is actually a Motion for Review of the Magistrate Judge's Order pursuant to Fed. R. Civ. P. 72(a). In the interest of judicial economy, the Court will

---

[1] The School System Defendants assert that, pursuant to Local Rule 7.01(b), the Magistrate Judge ruled on the Cross Motion for Protective Order before they could file a response in opposition thereto. (Doc. No. 64 at 3).

consider the Motion for Reconsideration (not to be confused with Defendant Byrd's underlying Motion to Rescind) also to be a Motion for Review of the Magistrate Judge's Order since it concerns the same Order and issues as Defendant Byrd's appeal and objection.

## BACKGROUND

At the time of the events in question here, Plaintiff was a public high school student in Wayne County, Tennessee. Plaintiff has now reached the age of majority. First Amended Complaint (Doc. No. 33) at 3. Plaintiff sued the Wayne County School System; Ryan Franks, the Wayne County High School principal; and David Byrd, a member of the Tennessee House of Representatives. Plaintiff claimed that he was compelled to engage in political speech when his school and principal compelled him to wear a David Byrd t-shirt on the school's traditional senior trip. Byrd was, at the time, a candidate for re-election to the Tennessee House of Representatives. Plaintiff alleged that wearing the shirt was mandatory (or at least understood by the students as mandatory) and violated his constitutional right not to engage in political speech. Plaintiff argued that the use of school resources to promote political candidates, political campaigns, and partisan politics is a violation of his First Amendment rights to freedom of speech and freedom of association. He also alleged that Byrd conspired with Franks (who is Byrd's nephew) to violate the constitutional rights of students at Wayne County High School, including Plaintiff.

Plaintiff filed, with his original Complaint, a Motion for Protective Order (Doc. No. 2), seeking Court approval to proceed in this action anonymously, through the use of the pseudonym "John Doe." At the time of the Motion for Protective Order, Plaintiff was a minor. Plaintiff argued he was entitled to proceed as John Doe because he was challenging governmental activity, because he was a minor, and because the case was politically charged, which could result in threats and violence. (Doc. No. 3 at 2). Plaintiff also claimed that the use of a pseudonym would not prejudice

Defendants. (*Id*. at 3). Defendants did not respond to Plaintiff's Motion for Protective Order,[2] and the Magistrate Judge granted the Motion (Doc. No. 32). The protective order provides that Plaintiff may refer to himself as "John Doe," Defendants shall refer to Plaintiff as "John Doe," and Defendants shall not identify Plaintiff or his family members to any non-party or in any filing with the Court. (Doc. No. 32). Thus, the issue is not Defendants' knowledge of Plaintiff's identity; it is disclosure of Plaintiff's identity to the public.

Thereafter, Plaintiff filed a First Amended Complaint (Doc. No. 33) and indicated therein that he is no longer a minor. In addition, Plaintiff asserted a new claim that, as a result of Defendants' violation of his constitutional rights, he suffered humiliation, shame, fear, and emotional distress.

Defendant Byrd then filed a Motion to Rescind Prior Order Granting Plaintiff's Motion for Protective Order and to Compel Plaintiff to Substitute Name of Real Party in Interest under Fed. R. Civ. P. 17 (Doc. No. 36). Byrd argued that because Plaintiff was no longer a minor and because he had asserted newly raised legal theories concerning emotional distress, there was no longer any reason for Plaintiff to proceed anonymously; he also asserted that continued anonymity would prejudice Defendants. Plaintiff opposed Byrd's Motion and sought additional protections from the Court. (Doc. No. 50).

The Magistrate Judge denied Byrd's Motion, construing it as a Motion to Alter or Amend Judgment under Fed. R. Civ. P. 59. He found that Byrd had not shown any of the reasons required under Rule 59 to change the prior Order. (Doc. No. 58). Specifically, the Magistrate Judge found that Byrd had not shown there to be a clear error of law, an intervening change in controlling law,

---

[2] Defendants assert that they declined to oppose the order because they recognized that Plaintiff was a minor, a factor that would weigh heavily in the Court's analysis of the issue. (Doc. No. 64 at 2).

newly discovered evidence, or manifest injustice. (*Id.*). In the same Order, the Magistrate Judge granted Plaintiff's Cross Motion for Protective Order and granted the additional protections requested therein. (*Id.*).[3] Now before the Court are Defendants Wayne County School System and Ryan Franks' Motion for Reconsideration of the Magistrate Judge's Order[4] and Defendant Byrd's Appeal of that Order.

## MOTION FOR REVIEW

Pursuant to Fed. R. Civ. P. 72(a), the Court may modify or set aside any part of the Magistrate Judge's Order that is clearly erroneous or is contrary to law. 28 U.S.C. § 636(b)(1)(A). The "clearly erroneous" standard applies only to factual findings, while legal conclusions are reviewed under the "contrary to law" standard. *Norfolk Cty Retirement Sys. v. Cmty. Health Sys., Inc.,* No. 3:11-cv-00433, 2019 WL 3003647, at * 1 (M.D. Tenn. Apr. 19, 2019); *Equal Emp't Opportunity Comm'n v. Burlington Northern & Santa Fe Ry. Co.*, 621 F. Supp. 2d 603, 605 (W.D. Tenn. 2009). A finding of fact is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *JSC MCC EuroChem v. Chauhan*, 3:17-mc-00005, 2018 WL 3872197, at * 2 (M.D. Tenn. Aug. 15, 2018). A legal conclusion is contrary to law if it contradicts or ignores applicable precepts of law, as found in the Constitution, statutes, or case precedent. *Id*. "The Court is not empowered to reverse the magistrate judge's finding simply because the Court

---

[3] Those additional protections include: (1) no party shall be permitted to disclose the identity of the Plaintiff except as expressly authorized by the protective order, and (2) if at any point the identity of the Plaintiff needs to be disclosed to the Court in any pleading, motion, or other document, the name of the Plaintiff shall be filed under seal. (Doc. No. 49).

[4] Plaintiff's assertion that "two defendants in this action did not seek to strip Plaintiff of his anonymity" does not tell the whole story, since the Wayne County School System and Franks have moved for reconsideration of the Magistrate Judge's Order and asked that he set aside the protective order entirely. (Doc. No. 63).

would have decided the issue differently." *Shabazz v. Schofield*, No. 3:13-CV-00091, 2014 WL 6605504, at *1 (M.D. Tenn. Nov. 19, 2014).

## MOTIONS TO PROCEED PSEUDONYMOUSLY

As a general rule, all parties must be named in a lawsuit. *De Angelis v. Nat'l Entertainment Group LLC*, Civil Action 2:17-cv-00924, 2019 WL 1071575, at * 2 (S.D. Ohio Mar. 7, 2019) (citing *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004)). Fed. R. Civ. P. 17(a)(1) provides that an action must be prosecuted in the name of the real party in interest. Courts thus "start from the premise that proceeding pseudonymously is the exception rather than the rule." *De Angelis*, 2019 WL 1071575, at * 2. The Sixth Circuit does recognize, however, that under certain circumstances plaintiffs may be excused from identifying themselves. *Id*. The issue is whether a plaintiff's privacy interests substantially outweigh the presumption of open judicial proceedings. *Id*. In order to circumvent the requirement that the complaint state the names of all parties, it must be shown that the need for anonymity substantially outweighs the presumption that parties' identities are public information and the risk of unfairness to the opposing parties. *Doe v. Warren Cty., Ohio*, No. 1:12-cv-789, 2013 WL 1071575 at * 2 (S.D. Ohio Feb. 25, 2013).

Factors relevant to deciding whether to allow a plaintiff to proceed anonymously include: (1) whether the plaintiffs are suing to challenge governmental activity; (2) whether prosecution of the lawsuit will compel plaintiffs to disclose information of the utmost intimacy; (3) whether the litigation compels the plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children. *Porter*, 370 F.3d at 560; *DeAngelis*, 2019 WL 1071575, at * 2; *D.E. v. John Doe I*, 834 F.3d 723, 728 (6th Cir. 2016). It is also relevant to consider whether the defendants are being forced to proceed with insufficient information to

present their arguments against the plaintiff's case. *Warren Cty.,* 2013 WL 684423, at * 2. Leave to proceed pseudonymously is within the discretion of the court. *Id.*

*Doe v. Porter* involved elementary school children plaintiffs who sued the school system for allowing the teaching of the Christian Bible as religious truth, claiming that such action violated the First Amendment's Establishment Clause. *Porter*, 370 F.3d at 560. The Sixth Circuit found that allowing the plaintiffs to proceed pseudonymously was not an abuse of discretion. *Id*. at 561. Noting that the lawsuit involved young children, was a challenge to a government activity, and would force the plaintiffs to reveal their beliefs about a particularly sensitive topic (religion) "that could subject them to considerable harassment," the court upheld the district court's protective order allowing the plaintiffs to litigate pseudonymously. *Id*.

The court reasoned that religion "is perhaps the quintessentially private matter" and that the plaintiffs, "by filing suit, made revelations about their personal beliefs and practices that are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior." *Id*. at 560. Plaintiffs in that case presented evidence of letters to the editor of a local paper and quotes from an article in the newspaper that included attacks on the plaintiffs' character, high emotion, threatening behavior, and warnings about potential "family trouble." *Id*.

In *Doe v. Univ. of the South*, Case No. 4:09-cv-62, 2011 WL 13187184 (E.D. Tenn. July 8, 2011), the court stated that Fed. R. Civ. P. 10(a) (requiring that a complaint contain the names of all parties) "protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties. This creates a strong presumption in favor of parties proceeding in their own names. Defendants have the right to know who their accusers are, as they may be subject to embarrassment or fundamental unfairness if they do not." *Id*. at * 18. That case involved a student accused of sexual assault who claimed that the nature of the university's

disciplinary proceedings violated his rights. The Court found that being accused of rape or sexual assault is a personal matter "of the utmost intimacy," particularly because the matter had not yet been disclosed publicly and no related criminal prosecution had been issued to date. *Id.* On those facts, the court allowed the plaintiff to proceed anonymously.

In *DeAngelis*, one of the plaintiffs was a dancer at the defendant's adult entertainment club. She sought to proceed anonymously for fear of "stigma from her family, friends, employers, and community if they learn of her history as a dancer." She also contended that her safety "could be at risk" and that she could be harassed or stalked by former customers. *DeAngelis*, 2019 WL 1071575, at * 1. The plaintiff was not challenging governmental authority, she was not a child, and the litigation did not compel her to disclose an intention to violate the law. *Id.* at * 2. The court found that the plaintiff had not demonstrated that disclosing her identity would implicate a matter of the utmost intimacy. *Id.* at * 3; *but see Doe # 1 v. Déjà Vu Consulting, Inc.*, Case No. 3:17-cv-00040, 2017 WL 3837730 (M.D. Tenn. Sept. 1, 2017) (plaintiff adult entertainment dancer's privacy interests outweighed presumption of open proceedings where plaintiff feared the risk of stalking and physical violence by customers and social stigma for herself and her family, and defendant did not identify any possible prejudice).

In another situation, a court denied the plaintiffs' motion to proceed anonymously and found that the plaintiffs had not shown that their "interest in anonymity satisfies the *heavy* burden they must carry to avoid the standard obligation to identify them." *Warren Cty.*, 2013 WL 684423, at * 3 (emphasis added). There, the plaintiffs were foster parents who alleged that certain state and local agencies violated their civil rights, caused them emotional distress, invaded their privacy, slandered them, and committed other violations of state law. *Id.* at * 2. The court found that no added benefit or anonymity outweighed the right of access to public records. *Id.* at * 3.

In another case, the Sixth Circuit upheld a district court's denial of a plaintiff's motion for a protective order to proceed under a pseudonym ("D.E.") where he argued that revealing his name would cause a stigma and subject him to negative scrutiny from prospective employers. *D.E.*, 834 F. 3d at 728. The court held that the litigation did not require D.E. to disclose information of the utmost intimacy, and as for potential negative scrutiny from future employers, he "forfeited his ability to keep secret his actions" when he sued the defendants. *Id.*

## ANALYSIS

The Magistrate Judge analyzed Defendant Byrd's Motion to Rescind the protective order under Fed. R. Civ. P. 59(e), which provides for motions to alter or amend judgments. The protective order in this case is not a judgment; it is an interlocutory order, just as the Magistrate Judge's Order at issue herein is an interlocutory order. Thus, this Court must and will look instead to Fed. R. Civ. P. 54(b), which provides that interlocutory orders may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities. Rule 59 refers to final judgments, and is not applicable to the opinion at hand. *E.g., Forgues v. Select Portfolio Servicing, Inc.*, No. 1:15-CV-1670, 2016 WL 1165157, at *1 (N.D. Ohio Mar. 25, 2016); *Forgues v. Select Portfolio Servicing, Inc.,* No. 1:15-CV-1670, 2016 WL 1165157, at *1 (N.D. Ohio Mar. 25, 2016) (applying Rule 54(b) and noting that "Rule 59 refers to final judgments, and is not applicable to the opinion at hand").

District courts may afford such relief from interlocutory orders as justice requires. *Grae v. Corrections Corp. of America*, 330 F. R. D. 481, 490 (M.D. Tenn. 2019). District courts possess the authority and broad discretion to reconsider and modify interlocutory orders at any time before final judgments. *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 952 (6th Cir. 2004); *Every v. Brennan,* No. 3:16-cv-710, 2018 WL 4568600, at * 2 (E.D. Tenn. Sept. 24,

2018) ("Without standards in the rule itself or in the local rules, motions for reconsideration under Rule 54(b) are at the Court's discretion." (quoting *Rodriguez*, 89 F. App'x at 952) (citation omitted).

Courts traditionally will find justification for reconsidering interlocutory orders when (but not necessarily only when) there is (1) an intervening change of controlling law, (2) new evidence available, or (3) a need to correct clear error or prevent manifest injustice.[5] *Grae*, 330 F.R.D. at 490. (citing *Louisville/Jefferson Cty Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009)). As noted above, this standard vests significant discretion in district courts. *Id.* (quoting *Rodriguez*, 89 F. App'x at 959 n.7); *Kerns v. Caterpillar Inc.,* 144 F. Supp. 3d 963, 967 (M.D. Tenn. 2015); *Abington Emerson Capital, LLC v. Adkins*, 2:17-cv-143, 2018 WL 6427683, at * 1 (S.D. Ohio Dec. 7, 2018).[6]

---

[5] These are the same circumstances that will justify a motion for reconsideration. But case law does not indicate that in the Rule 54(b) context, the granting of a motion for reconsideration *must* fit within the rubric of one or more of these particular circumstances. In other words, though a Rule 54(b) motion typically will be granted if such circumstances exist, that does not mean that it must be *denied* where these circumstances are *not* found to exist. It appears from cases like *Every* and *Rodriguez* that in the Rule 54(b) context, district courts enjoy substantially more flexibility than that. For example, in *Rodriguez*, the Sixth Circuit upheld a district court's decision denying a motion for reconsideration under Rule 54(b). In so doing, the court found no error in the district court's statement that it "generally will consider motions for reconsideration pursuant to the grounds available for motions to alter or amend under Rule 59(e) or upon a showing that the court clearly overlooked material facts or controlling law that was presented by the party in its prior motion and that would result in a different disposition." *Rodriguez*, 89 F. App'x at 959 n. 8. The Sixth Circuit explained, "We do not interpret this language as stating that motions for reconsideration of interlocutory orders are governed by the standards of either Rule 59 or Rule 60. The district court merely appeared to give litigants guidance on when it would generally find that justice required the granting of a motion for reconsideration." *Id.* The clear upshot of these remarks is that the Rule 54(b) standard is generally a flexible "interests-of-justice" standard, the application of which can (and generally is), but need not be, guided by the pertinent Rule 59(e) circumstances. And it makes sense the the Rule 54(b) standard would be more flexible than the Rule 59(e) standard, which has to account for the interests in the finality of final judgments to which Rule 59(e)—but not Rule 54(b)— is applicable.

[6] The district court's discretion to reconsider an interlocutory order is broad, and it may modify or even rescind such interlocutory orders any time before judgment. *Thomas v. Schroer*, No. 2:13-cv-02987, 2014 WL 11514963, at * 1 (W.D. Tenn. Oct. 16, 2014).

In determining whether justice requires reversal of a prior interlocutory order, courts assess circumstances such as whether the court patently misunderstood the parties, whether the court made a decision beyond the adversarial issues presented, whether the court made an error in failing to consider controlling decisions or data, and whether a controlling or significant change in the law has occurred. *Said v. Nat'l R.R. Passenger Corp.*, 390 F. Supp. 3d 46, 50 (D. D.C. 2019). The Court must determine, within its discretion, "whether reconsideration is necessary under the relevant circumstances." *In Defense of Animals v. Nat'l Institutes of Health*, 543 F. Supp. 3d 70, 75 (D. D.C. 2008). The burden is on the moving party to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied. *Said*, 390 F. Supp. 3d at 50.

In seeking a protective order, Plaintiff argued that this action involves a challenge to governmental activity, specifically the requirement that Wayne County High School students wear attire that favors one candidate for public office; that Plaintiff was a minor; and that the race for Byrd's re-election was particularly intense, given allegations against Byrd from former Wayne County High School students. (Doc. No. 3 at 2). Plaintiff asserted that cases involving politically charged debates and the constitutionality of government actions have long given rise to threats and violence. (*Id.* at 2-3) (citing a law review article). Finally, Plaintiff argued that the use of a pseudonym would not prejudice Defendants. (*Id.* at 3).

Since the protective order was entered, however, Plaintiff attained the age of majority, so the need to protect a minor is no longer a factor weighing in favor of a protective order. It also appears that the "intensive" campaign and re-election of Defendant Byrd is over and also no longer a factor weighing in favor of a protective order. Defendant Byrd claims that Plaintiff's identity "has never really been much of a secret to anyone at Wayne County High School." (Doc. No. 37 at 4). He also asserts that he and his counsel were well aware of Plaintiff's identity before any

court process, including discovery, occurred in this matter. (Doc. No. 69). The issue is whether Plaintiff's privacy interests *now* substantially outweigh the presumption of open judicial proceedings, not when the protective order was first granted.

The lawsuit does still challenge governmental activity. Plaintiff's First Amended Complaint adds an allegation that Defendants caused Plaintiff to suffer emotional distress, humiliation, shame and fear and seeks damages on that basis. (Doc. No. 33). Defendants assert that Plaintiff has put his emotional condition and credibility at issue through this new allegation and they, therefore, are prejudiced by the protective order in a way they were not when it was first granted. This is part of Defendants' broader argument (advanced by Defendants Wayne County School System and Franks) that the Magistrate Judge's Order should be reversed because of Plaintiff's change in circumstances and new allegations. Defendants assert that the four *Doe v. Porter* factors no longer balance in favor of allowing Plaintiff to proceed anonymously. For example, Defendants assert that prosecution of this lawsuit will not require Plaintiff to disclose information "of the utmost intimacy." Moreover, Plaintiff is no longer a child, and there is no allegation that the litigation will compel Plaintiff to disclose an intention to violate the law. At the time of the Magistrate Judge's Order in April, Plaintiff was still a student at the Wayne County High School and the election and any allegations connected therewith were much more recent. Circumstances have changed since that time.

Plaintiff argues there is no "new evidence;" but there are new *circumstances* that directly affect the reasons for the protective order. Plaintiff avers that Defendants are no more prejudiced now than they were at the beginning of the lawsuit when the protective order was entered. Even if prejudice to Defendants has not increased since entry of that order, Plaintiff's legitimate interests in such protection has decreased, as indicated above. Not only has Plaintiff reached the age of

majority and left the school, but he also has raised additional claims for damages in this action. Having Plaintiff remain anonymous will prejudice Defendants' ability to test the credibility of and rebut Plaintiff's claims of humiliation, shame, embarrassment, fear, and emotional distress.[7] For example, if Plaintiff remains anonymous, Defendants are unable to question Plaintiff's friends, classmates, family, and others concerning his claims of emotional distress, humiliation, shame, and fear. Without identifying Plaintiff, Defendant could not possibly test his credibility or his claims through other people.

Plaintiff argues that the threat of retaliation has only intensified, but retaliation is not one of the *Doe v. Porter* factors for the Court to consider. And, although Plaintiff filed a Declaration in April 2019 stating that he had "witnessed retaliation against people who are suspected of being the plaintiff in this case, including loss of business," Plaintiff has not identified or described any specific threat, action of retaliation, or act of violence against him or his family, so those threats remain only possibilities. (Doc. No. 52). Plaintiff stated simply that he *believes* he will suffer considerable harassment if his identity is revealed. (*Id.*) Mere speculation of future harassment does not advance Plaintiff's cause. Plaintiff also mentions the "sensitivity of the issues," but that also is not a factor unless it would require the plaintiff to disclose or discuss information of the utmost intimacy, which Plaintiff has not shown. As in *D.E.*, Plaintiff "forfeited his ability to keep secret his action" when he, as an adult, filed his Amended Complaint and continued to litigate against Defendants. *D.E.*, 834 F.3d at 728. Finally, the fact that this case may have gained media

---

[7] Moreover, the right of public access to the courts is a "fundamental feature" of the American judicial system. *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177 (6th Cir. 1983) (citing policy considerations for retaining public access). Open trials promote "true and accurate fact finding." *Id*. at 1178 (quoting Justice Brennan in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 596 (1980)). "Public access creates a critical audience and hence encourages truthful exposition of facts, an essential function of a trial." *Brown*, 710 F.2d at 1178.

and community attention is reflective of why the public interest in open judicial proceedings should be respected.

In *Doe v. City of Detroit*, Civil Action No. 18-cv-11295, 2018 WL 3434345 (E.D. Mich. July 17, 2018), the plaintiff was transgender and sought anonymity. She cited to several instances of harassment, including notes threatening her life because of her gender transition. The court held that the plaintiff's fear was justified. It noted the increased threat of violence to which transgender individuals are exposed and held that the facts surrounding her transition were information "of the utmost intimacy." *Id.* at * 2. Citing *Doe v. Shalushi,* No. 10-11837, 2010 WL 3037789, at * 3 (E.D. Mich. July 30, 2010), the court stated that to support a fear of retaliation, the plaintiff must demonstrate that such retaliation is not merely hypothetical but based in some real-world evidence; a simple fear is not sufficient. *Id*.

Plaintiff contends this lawsuit is getting large amounts of press attention and that reasonable limits on the use of his name are necessary.[8] But Plaintiff has not shown that exposure of his identity will risk injury. Plaintiff may have raised controversial, intense, and "hot-button" issues in his community, but that does not mean they implicate intimate, personal matters; there is nothing intimate (or surprising, for that matter) about one's feeling that he or she should not be forced to wear a partisan political t-shirt as part of one's schooling. Valid or invalid, Plaintiff's claim is hardly scandalous. Nor does Plaintiff's claim necessarily reveal Plaintiff's personal feelings about a particular candidate; instead, it necessarily reveals only what Plaintiff thinks about being forced to wear clothing supporting the candidate.

---

[8] The assertion that Defendant Franks is the principal at the school Plaintiff attends is another factor that no longer weighs in Plaintiff's favor, since Plaintiff has graduated.

The Court finds that the Order of the Magistrate Judge (Doc. No. 58) is clearly erroneous and contrary to law and should be set aside. Based on the entire record and given the passage of time since entry of the original protective order, the Court is "left with the definite and firm conviction that a mistake has been committed." *JSC MCC EuroChem*, 2018 WL 3872197, at * 2. Likely due to a healthy appreciation for the value of finality, even in interlocutory orders, the Magistrate Judge used the stricter Rule 59(e) standard, rather that the applicable Rule 54(b) standard, which as noted above is more flexible,. Under the Rule 54(b) standard, the Magistrate Judge could have considered various relevant circumstances (including changed circumstances) he concluded he could not consider under the Rule 59(e) standard. Thus, acting under the impression that he was more constrained than he actually was in reconsidering his prior decision (because he thought there was no "new evidence" within the meaning of the Rule 59(e) standard), he did not appropriately weigh the prejudice from Plaintiff's Amended Complaint against any privacy interests of the now-majority-age Plaintiff. based on all the circumstances he could or ideally would have considered.

Therefore, the Order of the Magistrate Judge (Doc. No. 58) will be set aside. The Motion to Rescind Prior Order Granting Plaintiff's Motion for Protective Order (Doc. No. 32) and the Motion for Reconsideration (Doc. No. 63) will be granted, and the Protective Order (Doc. No. 32) will be vacated. Moreover, Plaintiff's Cross-Motion for Protective Order (Doc. No. 49) will be denied.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE